# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 3:26-CR-171 |
| | : | (JUDGE MARIANI) |
| WALNEL MORDAN SOTO | : | |

## MEMORANDUM OPINION

Before the Court is Defendant Walnel Mordan Soto's Motion to Revoke Detention Order and for Pretrial Release (Doc. 16), which follows the Court's August 25, 2026 Order of Detention (Doc. 14). For the reasons that follow, the Court will **DENY** Defendant's Motion.

## I. BACKGROUND

Defendant Walnel Mordan Soto ("Defendant" or "Soto") is a citizen of the Dominican Republic, allegedly without lawful presence in the United States. (Doc. 20 at 1). Soto was indicted by a grand jury on August 5, 2026 with one count of illegal reentry pursuant to 8 U.S.C. § 1326(a). (*See* Doc. 1). Soto was previously removed from the United States in 2016, and the Government alleges he re-entered without authorization at an unknown point thereafter under the alias "Lewis Jose Mordan Soto." (Doc. 20 at 1–2). Soto appeared before the Honorable Leo A. Latella on August 25, 2026, and pleaded not guilty to the charge against him. (Doc. 12). Magistrate Judge Latella then held a detention hearing and ordered Soto detained pending trial. (Doc. 14).[1] Although Defendant is presently in pre-trial detention as

[1] Magistrate Judge Latella found Defendant should be detained pending trial because: (1) the weight of evidence against the Defendant is strong; (2) Defendant lacks significant family or other ties to the

a result of his pending criminal charges, he is also subject to an active ICE detainer and a reinstated final order of removal. (Doc. 17 at 2). Defendant does not dispute that he will be immediately and properly re-detained by ICE if he is ordered released. (*Id.* at 1).

Defendant contends that his Detention Order must be revoked because the Government failed to make a threshold showing, by a preponderance of the evidence, that there was "a serious risk that [Defendant] will flee," pursuant to 18 U.S.C. § 3142(f). (Doc. 17 at 1–2). If the Government did not make such a threshold showing upon moving for Defendant's detention, no hearing should have been held in the first instance, according to Defendant. (*Id.*). Defendant argues that because he will be immediately and properly detained by ICE upon his release from pre-trial detention, there is no serious risk of his flight. (*Id.* at 5). The Government responds that it demonstrated Defendant was a serious flight risk and further argues that the Court "must assess the defendant's risk of nonappearance under § 3142 without assuming what immigration authorities will do under a separate statutory and regulatory regime." (Doc. 20 at 9).

---

community; (3) Defendant has significant family or other ties outside the United States; (4) Defendant lacks legal status in the United States; (5) Defendant is subject to removal or deportation after serving any period of incarceration; (6) Defendant has previously used alias(es) or false documents; (7) Defendant has prior criminal history; (8) Defendant has prior violations of probation, parole, or supervised release; (9) Defendant has participated in criminal activity while on probation, parole, or supervision. (Doc. 14).

## II. STANDARD OF REVIEW

A criminal defendant generally should not be detained pending trial except upon a specific showing of the need to detain him or as required by statute. The Bail Reform Act ("BRA"), 18 U.S.C. § 3141, *et seq.*, was enacted to advance this longstanding principle that "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Soriano Nunez*, 928 F.3d 240, 244 (3d Cir. 2019) (noting BRA "was enacted to ensure 'all persons, regardless of their financial status, shall not needlessly be detained ... when detention serves neither the ends of justice nor the public interest.'" (*citing United States v. Provenzano*, 605 F.2d 85, 87 n.13 (3d Cir. 1979) (quoting Bail Reform Act of 1966[2], Pub. L. No. 89-465 § 2, 80 Stat. 214, 214 (1966)))).

Although the BRA begins with a presumption of release, *see* 18 U.S.C. § 3142(a), the Act allows for pretrial detention in appropriate cases—namely, in cases involving certain serious offenses (which are not applicable here), *see* 18 U.S.C. § 3142(f)(1), and in cases involving flight risk or danger to the community. *See* 18 U.S.C. § 3142(f)(2). The BRA outlines a two-step process to determine whether pre-trial detention is appropriate if the Government contends a defendant poses a flight risk under § 3142(f)(2). First, an attorney for the Government or the Court, *sua sponte*, may move for a pre-trial detention hearing (*see* 18

[2] The Bail Reform Act of 1966 has been partially repealed and replaced, and a presumption in favor of release on bail for convicted defendants pending appeal is no longer applicable; however, the presumption in favor of *pre-trial* release remains. *See United States v. Diaz-Colon*, 729 F. Supp. 3d 232, 236 (D.P.R. 2024), *aff'd*, 2024 WL 5074591 (1st Cir. July 8, 2024), *cert. denied*, 145 S. Ct. 1110, 220 L. Ed. 2d 412 (2025).

U.S.C. § 3142(f)(2)); second, upon a showing that a pre-trial detention hearing is appropriate, the Court must conduct the hearing.

At step one, the Court must find that the case involves:

> **(A)** a serious risk that [the criminal defendant] will flee; or
> **(B)** a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror.

18 U.S.C. § 3142(f)(2). A finding that the defendant presents a serious risk of flight (allowing a hearing) must be supported by a preponderance of the evidence. *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Court must make an "individualized" determination of the criminal defendant's flight risk "at step one of the inquiry." *See United States v. Gonzalez*, 780 F. Supp. 3d 574, 582 (E.D. Pa. 2025) (citations omitted); *see also United States v. Sanchez*, 2025 WL 2101964, at *5 (M.D. Pa. July 25, 2025) (noting that "the Bail Reform Act demands ... [an individualized assessment]"). The threshold inquiry of whether a pre-trial detention hearing is appropriate "serves an important gate-keeping function, by preventing even the *opportunity* to seek detention in all but a certain, narrow subset of cases." *Sanchez*, 2025 WL 2101964, at *3 (citation omitted).

If a preponderance of the evidence shows a defendant poses a serious flight risk, then the Court conducts a pre-trial detention hearing and considers certain statutorily-provided factors. *See* 18 U.S.C. § 3142(g); *see also Gonzalez*, 780 F. Supp. 3d at 577 (noting "at step two, [the Government must] demonstrate that there is 'no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of any other person and the community' pursuant to 18 U.S.C. § 3142(e). In making

that determination, courts are instructed to consider the … [factors] enumerated in 18 U.S.C. § 3142(g).” (citation omitted)). Although this is a two-step process, courts routinely conduct both steps at a single hearing. *See United States v. Cook*, 87 F.4th 920, 924 (8th Cir. 2023) (noting “the two inquiries, while not identical, substantially overlap” and affirming that “the magistrate judge permissibly conducted the two inquiries in a single detention hearing”).

The parties agree that the Court reviews a Defendant’s detention order entered by a magistrate judge *de novo* and makes “an independent determination” whether a detention hearing was permitted. *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985) (holding that BRA contemplated *de novo* determination by district court upon a party’s motion to revoke a release or detention order); *see also* 18 U.S.C. § 3145(b) (“If a person is ordered detained by a magistrate judge … the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.”). Nonetheless, the Court need not conduct “an additional evidentiary hearing;” it “may make its independent determination based solely upon the evidence introduced at the prior hearing” and any evidentiary supplementation by the parties. *Sanchez*, 2025 WL 2101964, at *3 (quoting *United States v. Burgess*, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009)). Because the parties have not requested a new detention hearing, (*see generally* Docs. 16, 17, 20, and 21), the Court will decide Defendant’s Motion to Revoke Detention upon the existing evidentiary record.

## III. ANALYSIS

The only issue before the Court is whether the Government carried its burden of showing, by a preponderance of the evidence, that Defendant's case presented a "serious risk" of flight.

Defendant strenuously argues that his active ICE detainer and imminent deportation negate the otherwise copious evidence that he poses a serious flight risk. This issue has been thoughtfully analyzed by dozens of courts, and the Court will not engage in a lengthy recital of those analyses.[3] The common thread throughout these cases, though, is that the mere existence of an active ICE detainer cannot unilaterally dictate the outcome of the threshold flight-risk inquiry. *See Sanchez*, 2025 WL 2101964, at *5 ("If a defendant subject to an ICE detainer is required to remain detained pending trial or sentencing, *solely* because of that detainer, Congress's meticulously crafted detention framework under 18 U.S.C. § 3142 would, in effect, be overridden." (emphasis original)); *United States v. Diaz-Garcia*, 2025 WL 814359, at *8 (W.D. Pa. Mar. 14, 2025) ("Similarly, the facts that an individual is subject to an ICE detainer and may not be released if he is transferred to ICE custody are insufficient reasons to grant him pretrial release under the BRA. Rather, the Court is tasked with weighing the evidence and conducting an individualized assessment[.]"); *see also United States v. Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015) (affirming detention order because "the totality of the evidence supports the district court's ruling," despite defendant's active ICE

[3] *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) (collecting district court cases); *United States v. Gilbert-Perez*, 2026 WL 1216756, at *3 (M.D. Pa. May 4, 2026) (collecting cases); *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) (affirming detention order).

detainer). Thus, the Court should conduct the threshold flight risk inquiry *exactly as it normally would*, weighing the "the totality of the personal circumstances, family ties, associations, etc., and … criminal history," without permitting the singular fact of an active ICE detainer to pre-ordain any outcome or dispose of necessary evidentiary balancing. *Sanchez*, 2025 WL 2101964, at *6.

Although it is true that several courts have found an active ICE detainer mitigates a criminal defendant's flight risk,[4] the Court concludes that an individualized analysis of Soto's flight risk required the Magistrate Judge to conduct a detention hearing. In the present case, the Government presented evidence that, in nearly any other case, would create a nearly insurmountable showing of flight risk:

> Soto has previously been convicted of narcotics offenses in Pennsylvania. He is currently charged with driving under the influence in state court. He presented an alias to authorities when he sustained that arrest and another arrest for theft and receiving stolen property. He has significant ties to the Dominican Republic; that notwithstanding, he has repeatedly disregard[ed] laws precluding him from entering the United States without permission. The weight of the evidence [on his charges] is strong.

(Doc. 20 at 11). Thus, on one side of the scale, the Court is confronted with Defendant's undisputed[5] history of disobeying court orders and statutes, using an alias to avoid detection,

---

[4] *See Ailon-Ailon*, 875 F.3d at 1337 (stating that "a risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based"); *United States v. Gonzalez*, 780 F. Supp. 3d 574, 578 (E.D. Pa. 2025) (noting that "the plain meaning of 'flight' contemplates volitonal conduct" such that existence of ICE detainer cuts against serious risk of flight); *see also Gilbert-Perez*, 2026 WL 1216756 at *4; *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015). Notably, with the exception of *Gilbert-Perez*, many of these cases faced an inverted posture: the *Government* argued that a defendant should be detained because an active ICE detainer created a serious flight risk. Here, of course, the *Defendant* argues the inverse—that an active ICE detainer negates serious flight risk.

[5] Although Defendant disputes the conclusion that no conditions of release could assure his

and an absence of local ties. *See United States v. Hernandez-Us*, 2025 WL 918695, at *9 (W.D. Pa. Mar. 26, 2025) ("Defendant's prior interactions with immigration authorities, most notably his prior removal and subsequent re-entry to the United States without permission, calls into question his reliability and trustworthiness." (citing *Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1144 (D. Idaho 2023), for the proposition that a non-citizen "defendant's illegal reentry into the United States after removal is indicative of his or her general disregard for the law and court order.")). At the initial detention hearing, the Magistrate Judge further articulated that one of Soto's drug trafficking convictions related to a crime that occurred *while he was released on bond*, demonstrating Soto's particular non-compliance with release conditions. (Recording of August 25, 2026 Detention Hearing, *United States v. Soto*, Case No. 3:26-cv-171 (on file with Court; transcript available upon request)). Soto has further "lived without detection in the United States" for many years, and he faces a criminal charge carrying up to 20 years in prison. (*Id.*). The record is thus replete with evidence that Defendant poses a serious risk of flight, all of which the Court must consider given that § 3142 calls for a balancing of the "totality" of the evidence. *Sanchez*, 2025 WL 2101964, at *6.

On the other side of the scale, there is no credible evidence to mitigate Defendant's flight risk. Defendant has not presented evidence that he has local family ties, a job to maintain, or property ownership, for example. *See id.* (noting noncitizen defendant "is the primary caregiver for his son in the United States, maintains close relationships with

---

appearance in court, (*see* Doc. 21 at 2), he does not appear to dispute the veracity of the evidence of flight risk that the Government has advanced.

[extended family], and has an extensive history of residence and employment in the community, with both family members and employers attesting to his reliability and strong character"). Defendant presents only the happenstance that ICE will, presumably, detain him upon his release from pre-trial detention. That sole happenstance cannot single-handedly negate a mountain of evidence that the Magistrate Judge rightly considered. *See United States v. Perez-Vasquez*, 779 F. Supp. 3d 248 (N.D.N.Y. 2025) (holding Court may not consider existence of active ICE detainer dispositive and finding detention hearing was warranted by serious risk of flight).

Defendant encourages the Court to follow *Gilbert-Perez*, in which a criminal defendant was found not to pose a serious flight risk because "the Government conceded that if released from custody, ICE will almost certainly immediately take Gilbert-Perez into custody and initiate removal proceedings." *Gilbert-Perez*, 2026 WL 1216756, at *3. No such concession is present here. Given the fact-intensive nature of the flight-risk inquiry, the Court cannot find that a defendant's active ICE detainer restricts the Court from conducting a detention hearing at all. The holding in *Gilbert-Perez*, like the Court's holding here, should be limited to the individualized facts of the criminal defendant before the court. Although an active ICE detainer may provide one piece of evidence cutting against a finding of serious flight risk,[6] it does not unilaterally negate a plethora of contrary evidence. This holding accords with several courts that have conducted the same fact-intensive analysis and found that, despite a defendant's active ICE detainer and imminent deportation, the totality of the evidence

[6] *See supra* n. 4.

showed he posed a serious risk of flight. *See United States v. Phan*, 2026 WL 601874, at *16 (W.D. Pa. Mar. 4, 2026) ("[A]fter carefully weighing all of the facts of record, the Court concludes that the Government has sufficiently established by a preponderance of the evidence that … Defendant … will flee[.]"); *Hernandez-Us*, 2025 WL 918695, at *9 (W.D. Pa. Mar. 26, 2025) (reversing Magistrate Judge's release order and finding non-citizen criminal defendant posed flight risk despite active ICE detainer); *accord Diaz-Garcia*, 2025 WL 814359, at *11–12; *Perez-Vasquez*, 779 F. Supp. 3d 248; *see also Sanchez*, 2025 WL 2101964, at *5 (M.D. Pa. July 25, 2025) (granting in part motion to revoke detention order and ordering a new detention hearing).

This Court adopts the reasoning of the court in *Sanchez*. *See supra* p. 6. The possibility or even the likelihood of a criminal defendant being detained by ICE does not relieve or deprive this Court of its obligation to follow the carefully drafted requirements of the BRA, in particular the its requirement that the Court determine whether a criminal defendant is a flight risk under § 3142(f).

## IV. CONCLUSION

The Court finds that, notwithstanding Defendant's high likelihood of entering ICE custody if he were released, the Government has shown by a preponderance of the evidence that Defendant posed a serious risk of flight. Thus, a detention hearing was appropriately conducted by the Magistrate Judge. Defendant's Motion to Revoke Detention Order is **DENIED.** An appropriate Order follows.



Robert D. Mariani
United States District Judge